## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                              Chapter 13

Mark A. Formosa,                                    Case No. 17-46215

     Debtor.                                       Hon. Phillip J. Shefferly

_____/

## OPINION SUSTAINING IN PART AND DENYING IN PART OBJECTIONS TO MORTGAGE CREDITOR'S NOTICES OF POST-PETITION ATTORNEY FEES AND EXPENSES

## Introduction

The debtor filed this Chapter 13 case two days before a scheduled foreclosure sale of the debtor's home. Unfortunately, the mortgage creditor did not know about the bankruptcy case until after the sale was held. The home was sold at the foreclosure sale to an unrelated third party. Once the mortgage creditor learned of the bankruptcy case, it agreed to set aside the foreclosure sale. The mortgage creditor then filed a notice of post-petition attorney fees. The debtor objected. The United States Trustee ("UST") also objected. For the reasons set forth in this opinion, the Court will sustain some but not all of the objections.

## Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(B) and (O), over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a).

## Facts

The following facts are not in dispute.

Mark A. Formosa ("Debtor") owns a home located at 22315 Olmstead, Dearborn, Michigan 48124 ("Property"). On October 31, 2007, the Debtor granted a mortgage ("Mortgage") on the Property to Dearborn Federal Savings Bank ("Bank"), to secure repayment of a loan in the amount of $96,000.00. The Debtor made payments on the Mortgage for years, but eventually defaulted.

On February 6, 2017, the Bank sent the Debtor a notice of default and intent to foreclose. The notice stated that the Debtor was in default under the Mortgage, the amount required to cure the default as of that date was $4,150.79, and the failure to cure the default by March 6, 2017 may result in acceleration of the entire balance outstanding. The notice also stated that the payoff as of that date was $48,350.93.

When the Debtor did not cure the default, the Bank's attorney sent the Debtor a letter on March 21, 2017 advising that the debt was accelerated and that foreclosure proceedings had commenced. Enclosed with the letter was a notice of a foreclosure sale scheduled for April 27, 2017 at 11:00 a.m. On March 27, 2017, the Debtor spoke

-2-

by telephone with the Bank's president, who then sent the Debtor a follow up letter on March 28, 2017 with detailed information about how much the Debtor would have to pay to stop the foreclosure sale. The Debtor did not cure the default or respond to the follow up letter.

On April 25, 2017, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code. The same day, the Debtor filed a matrix of creditors that included the Bank. Although the Debtor's attorney instructed his assistant to send a copy of the petition to the Bank, the Debtor's attorney later learned that his assistant did not do so. Neither the Debtor nor the Debtor's attorney contacted the Bank or its attorney to tell them about the bankruptcy petition.

Not knowing that the Debtor had filed Chapter 13, the Bank proceeded with the foreclosure sale of the Property on April 27, 2017. The Property was purchased at the foreclosure sale by Stan Miciuria and Michael Miciuria (collectively, "Purchaser") for $70,934.58. That was enough to pay off the Mortgage and return a surplus to the Debtor of $16,000.00.

On May 2, 2017, the Bank received a Notice of Chapter 13 Bankruptcy Case from the Bankruptcy Court Clerk. The Bank then consulted with Silverman & Morris, P.L.L.C. ("Law Firm"), an experienced bankruptcy law firm, regarding the foreclosure sale and the Chapter 13 case. The Law Firm reviewed the Chapter 13 case file, and

-3-

worked to unwind the foreclosure sale because it violated the automatic stay that had come into effect upon the Debtor filing his Chapter 13 petition. The Debtor's attorney suggested using an affidavit to expunge the foreclosure sale but the Law Firm, after consulting with the Bank and the Bank's nonbankruptcy, foreclosure attorney, rejected that idea. Instead, the Law Firm recommended that the Bank obtain an agreement to rescind the foreclosure sale and an order in the Debtor's case approving the agreement. The Law Firm chose this approach because of its concern that just recording an affidavit may not be sufficient to protect the Bank under Michigan real property law, especially because the Property had been bought by the Purchaser at the foreclosure sale for cash in an amount in excess of the Mortgage balance. Also, this surplus, which would have been property of the bankruptcy estate in the Debtor's Chapter 13 case, would have to be returned to the Purchaser if the foreclosure sale was unwound.

On June 30, 2017, the Bank filed a Motion for Approval of Agreement for Rescission of Foreclosure Sale and Reinstatement of Mortgage ("Motion"). Attached to the Motion was an agreement ("Agreement") signed by the Debtor, the Bank, the Purchaser, and the Chapter 13 Trustee. The Agreement provided for the foreclosure sale to be rescinded; the sheriff's deed to be expunged; the Bank to return to the Purchaser the Mortgage payoff check it had received from the Purchaser; the Debtor

-4-

to return to the Purchaser the surplus check he had received from the Purchaser; the reinstatement of the Mortgage; and an exchange of mutual releases. No objections to the Motion were filed. On July 25, 2017, the Court entered an order granting the Motion and approving the Agreement.

On August 23, 2017 and September 12, 2017, the Bank filed two separate notices (ECF Nos. 48 and 49) (collectively, "Notices") on Official Form 410S2, Notice of Postpetition Mortgage Fees, Expenses, and Charges. The first Notice itemized attorney fees for the Law Firm for May through July, 2017 in the amount of $11,606.25 and expenses in the amount of $24.18. The second Notice itemized attorney fees for the Law Firm for August, 2017 in the amount of $768.75 and expenses in the amount of $24.00.

On October 19, 2017, the Debtor filed an objection (ECF No. 53) to the Notices, arguing that the attorney fees and expenses are not required by the Mortgage and applicable nonbankruptcy law to cure a default or maintain payments under § 1322(b)(5) of the Bankruptcy Code, and that the amount of the attorney fees and expenses is unreasonable. On October 20, 2017, the UST also filed an objection (ECF No. 56) to the Notices, arguing that the amount of the attorney fees and expenses is unreasonable. The Bank filed replies to the objections (collectively, "Objections").

-5-

On November 21, 2017, the Court held a hearing on the Notices and the Objections. Following the hearing, the Court permitted the parties to each file a post-hearing brief. The Bank, the Debtor and the UST all did so.

## Procedure

The first issue before the Court involves the procedure regarding the Notices and the Objections.

Federal Rule of Bankruptcy Procedure 3002.1, titled "Notice Relating to Claims Secured by Security Interest in the Debtor's Residence," was promulgated in 2010 to create a procedure to provide information and resolve disputes between debtors in Chapter 13 cases and creditors in those cases who hold a mortgage on the debtor's principal residence. The rule only applies in Chapter 13 cases and only to a claim "secured by a security interest in the debtor's principal residence . . . for which the plan provides that either the trustee or the debtor will make contractual installment payments." The rule provides both the form and content for a mortgage creditor in such cases to provide notice of any payment changes, including interest rate and escrow account adjustments, and any fees, expenses or other charges. The rule strives to ensure that a debtor is fully informed about what they owe on their mortgage during the life of their Chapter 13 case. The rule also provides both the form and content for a mortgage creditor in such cases to provide notice of any final amounts necessary for

a debtor to cure any default prior to completing the debtor's Chapter 13 plan. These notice requirements under the rule – and the procedures prescribed by the rule to resolve any disputes – have a salutary effect in Chapter 13 cases by minimizing any surprises after a debtor leaves Chapter 13.

Rule 3002.1 applies to this case because the Debtor is in a Chapter 13 case, the Mortgage held by the Bank secures a claim on the Property, which is the Debtor's principal residence, and the Debtor's plan provides for the Chapter 13 Trustee ("Trustee") to make contractual installment payments on the Mortgage.

The Bank filed the Notices under Rule 3002.1(c), which reads as follows:

> (c) Notice of Fees, Expenses and Charges. The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

The Notices were timely filed on an Official Form as prescribed by Rule 3002.1(d).

The parties do not dispute that Rule 3002.1(c) sets forth the proper procedure to file the Notices. However, the Bank argues in its replies to the Objections that the Debtor and the UST cannot object to the Law Firm's fees and expenses unless they file a motion under Rule 3002.1(e), which reads as follows:

-7-

Determination of Fees, Expenses, or Charges. On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code.

The Bank is correct that the Objections do not constitute a motion. However, while the issues required to be adjudicated by motion under Rule 3002.1(e) are similar to the issues encompassed by Rule 3002.1(c), they are not identical. Rule 3002.1(e) expressly requires a motion when either a debtor or a trustee seeks a determination of whether payment of a claimed fee or expense "is required by the underlying argument, and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." But a notice filed under Rule 3002.1(c) is not limited to fees and charges that are required to "cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." A notice filed under Rule 3002.1(c) may include *any* fees or expenses claimed by a creditor holding a mortgage on a debtor's principal residence, without regard to whether payment of such fees or expenses is required to "cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." In other words, Rule 3002.1(c) is broader than Rule 3002.1(e). The only qualifications for fees or expenses to be included in a notice filed under Rule 3002.1(c) are that they must be incurred in connection with the

-8-

mortgage holder's claim after the bankruptcy case was filed, and the holder of the claim must assert that they are recoverable against the debtor or the debtor's principal residence.

To be sure, the Debtor and the UST vigorously dispute that payment of the Law Firm's fees and expenses is required by the Mortgage and applicable nonbankruptcy law to permit the Debtor to "cure and maintain" payments on the Mortgage under § 1322(b)(5). And the Bank is correct that determination of this dispute requires a motion under Rule 3002.1(e). But, more fundamentally and quite apart from whether the Debtor may use § 1322(b)(5), the Debtor and the UST also argue that the Law Firm's fees and expenses are not recoverable *at all* from the Debtor or the Property. That is a Rule 3002.1(c) issue. The Debtor and the UST are correct that neither Rule 3002.1(c) nor Rule 3002.1(e) specify that a motion is required for them to raise that issue.

A literal application of the procedures created by Rule 3002.1(c) and (e) arguably dictates that the Court should only adjudicate the specific Rule 3002.1(c) issues in the procedural context of the Objections to the Notices, and that it should not adjudicate the separate determination of whether payment of any claimed fees and expenses is required to cure a default or maintain payments in accordance with § 1322(b)(5) unless a motion is filed under Rule 3002.1(e). Fortunately for all in this

-9-

case, the Court need not consider whether to insist on a literal application of Rule 3002.1(c) and (e). The reason is because the Bank agreed at the hearing to waive the procedural objection raised in its papers and expressly consented to the Court's consideration of *all* of the issues raised by the Debtor and the UST in the Objections, even though a separate motion was not filed under Rule 3002.1(e). And, to ensure that all parties were given a full opportunity to be heard on all of the issues raised by the Objections – whether those issues relate to Rule 3002.1(c) or just to the "cure and maintain" § 1322(b)(5) determination under Rule 3002.1(e) – the Court permitted all parties to file a supplement to their pleadings after the hearing was held.

In light of the Bank's oral waiver of the procedural objection in its papers, and with all parties having now been given a full opportunity to be heard, the Court considers all of the issues raised by the Notices and the Objections to be properly joined for disposition by the Court despite the absence of a motion.[1]

---

[1] At the hearing, a practical reason surfaced for the Court to hear all of these issues together, and to do so sooner rather than later. Specifically, the Trustee stated that, absent the filing of an objection to the Notices, the Trustee would have immediately begun making distributions to the Bank based on the Notices. According to the Trustee, the fees and expenses in the Notices would be paid as a class 5.2 claim under the Debtor's plan, ahead of priority claims and general unsecured claims. One potential problem with this practice is that Rule 3002.1(e) provides a debtor with one year after service of a notice under Rule 3002.1(c) in which to file a motion to determine whether payment of any claimed fee, expense, or charge in such notice is required under the mortgage and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5). Immediate payment of a claimed fee, expense or charge, based solely on the filing of a notice, truncates a debtor's one year period to file a motion. Certainly in this case, it is best to get all these issues resolved now to eliminate the

## Under Fed. R. Bankr. P. 3002.1(c), are any of the
## Law Firm's fees and expenses recoverable by the Bank?

As explained earlier, a notice of fees and expenses is required to be filed and served by Rule 3002.1(c) if the fees and expenses were incurred in connection with a claim after the bankruptcy case was filed, and the holder of the claim asserts that the fees and expenses are recoverable against the debtor or the debtor's principal residence. The Notices claim a total of $12,375.00 in attorney fees and $48.18 in expenses in connection with the Bank's claim under the Mortgage, incurred during the period from May through August, 2017, after the Debtor filed his Chapter 13 petition, and the Bank asserts that they are recoverable against the Debtor or the Property. These facts mean that the Law Firm's fees and expenses are of the type that Rule 3002.1(c) covers. However, Rule 3002.1(c) does not provide a means to determine whether the claimed fees and expenses truly are recoverable. That determination is left to other sources of law, as Rule 3002.1(c) is just a notice provision.

Ordinarily, as explained by the Supreme Court, each party to a dispute pays for its own attorney fees: the "'basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant

---

risk that the Trustee goes ahead and pays the Law Firm's fees and expenses under the Notices before the Debtor files a motion within the one year period provided by Rule 3002.1(e).

-11-

pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" Baker Botts L.L.P. v. ASARCO LLC, ___ U.S. ___, 135 S. Ct. 2158, 2164 (2015) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53 (2010)).

In this case, the Bank does not cite any statute by which it claims a right to recover the Law Firm's attorney fees and expenses, but it does assert that the Mortgage is a contract that makes the Debtor responsible to pay its attorney fees and expenses. Section 9 ("Section 9") of the Mortgage reads in pertinent part as follows:

> **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to: . . . (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . .
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.

Section 9 expressly authorizes the Bank to recover attorney fees and expenses, but only to the extent that they are "reasonable attorneys' fees to protect its interest

in the Property." The Debtor and the UST argue that this provision does not permit the Bank to recover any of the Law Firm's fees and expenses. The Court will first address the Law Firm's fees and expenses that relate to setting aside the foreclosure sale and then address the Law Firm's other fees and expenses.

The fees and expenses to set aside the foreclosure sale

The Debtor and the UST argue that none of the Law Firm's fees and expenses to set aside the foreclosure sale are recoverable for three reasons. First, all of these fees and expenses would have been avoided if the Bank had not breached its duty to run a PACER search and investigate whether the Debtor filed bankruptcy before conducting the foreclosure sale. Second, a creditor who violates the automatic stay can never recover its attorney fees and expenses incurred to fix the stay violation. Third, the amount of the Law Firm's fees to set aside the foreclosure sale is unreasonable because the Law Firm used an unnecessarily time consuming and complex procedure to have the foreclosure sale set aside.

The Bank counters that all of the Law Firm's fees and expenses incurred to fix the stay violation could have easily been avoided if the Debtor had simply notified the Bank when he filed his Chapter 13 petition. If anyone breached a duty, it was the Debtor, not the Bank, that did so. Second, the procedure used by the Law Firm was necessary under applicable Michigan real property law to effectively set aside the

-13-

foreclosure sale. Third, the Law Firm's fees and expenses in this case were reasonable for the services that the Law Firm rendered.

Before turning to how Section 9 applies to the Law Firm's fees and expenses, it is necessary to first sort out the competing claims of the parties regarding who had what duty and who was in the best position to take some action that would have avoided these fees and expenses.

There is nothing in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure that requires a creditor to take any specific action to determine if the creditor's borrower has filed bankruptcy. Further, neither the Debtor nor the UST provide the Court with any statute or other controlling authority that imposes a duty on a creditor to conduct a PACER search or other investigation before proceeding with a foreclosure sale. The most that the Debtor and the UST point to in support of their claim that the Bank had such a duty is their claim that Fannie Mae and Freddie Mac publish guidelines that require a creditor holding a mortgage insured by Fannie Mae or Freddie Mac to conduct a PACER search before proceeding with a foreclosure sale. The Debtor and the UST concede that Fannie Mae's and Freddie Mac's guidelines do not have the force of law but argue that these guidelines are recognized in the mortgage industry and that, to their knowledge, mortgage creditors do customarily conduct a PACER search before proceeding with a foreclosure sale.

-14-

Despite the absence of any controlling authority imposing a duty on a foreclosing creditor to conduct a PACER search or other investigation, there is no question that a foreclosing creditor would be well advised to do so. A small investment of time in conducting a PACER search or some other investigation to confirm that a borrower has not filed a bankruptcy case can go a long way to avoiding time consuming and costly fights like the one at bar. But the law imposes no legal duty to do so.

As for the Debtor, the Bank is correct that the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure do impose a duty on a debtor to notify creditors when the debtor files a bankruptcy petition. Section 521(a)(1)(A) requires a debtor to file a list of creditors. Federal Rule of Bankruptcy Procedure 1007(a)(1) requires that the list include the name and address of each creditor and requires that the list be filed with the debtor's petition.

The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure also impose a duty on the clerk of the bankruptcy court to provide notice of the bankruptcy case to creditors. Section 342(a) of the Bankruptcy Code states that "There shall be given such notice as is appropriate . . . of an order for relief in a case under this title." Federal Rule of Bankruptcy Procedure 2002(f)(1) states that the clerk of the bankruptcy court shall give all creditors "notice by mail of [ ] the order for relief."

There is no dispute about what happened in this case. On April 25, 2017, the Debtor filed a matrix listing his creditors with his Chapter 13 petition. The matrix included the Bank and accurately showed its address as 22315 Michigan Avenue, Dearborn, Michigan 48124-2259. On April 29, 2017, the Bankruptcy Noticing Center filed a certificate of service stating that notice of the Debtor's Chapter 13 petition was sent to the Bank by first class mail on April 29, 2017. The Debtor did exactly what the Bankruptcy Code and Federal Rules of Bankruptcy Procedure require: he timely and properly listed the Bank as a creditor so that the bankruptcy court clerk could timely and properly give the Bank notice by mail of the order for relief in this case.

But the Bank contends that the Debtor should have done more. The Bank argues that the Debtor well knew that the foreclosure sale was scheduled for April 27, 2017. The Debtor, or his attorney, could have easily called or otherwise notified the Bank of the filing of the Debtor's Chapter 13 petition on April 25, 2017, which would have allowed the Bank to call off the foreclosure sale and avoid incurring the Law Firm's fees and expenses to set aside the foreclosure sale post-petition. In support, the Bank cites a number of cases. None of the cited cases impose on a debtor the affirmative duty that the Bank urges this Court to impose. All of the cases cited by the Bank involve either a debtor who failed to perform their prescribed notice duty under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, or a debtor

-16-

who concealed notice of a bankruptcy filing from a creditor. None of the cases cited by the Bank provide authority for the Court to hold that the Debtor had an affirmative duty to tell the Bank by telephone, fax or email either that he was going to file Chapter 13 or that he did so on April 25, 2017.

That the Debtor complied with his duty under the law is not to say that the Court disagrees with the Bank that the Debtor could have done more. Much of the Law Firm's fees and expenses undoubtedly would have been avoided if the Debtor had just taken the extra step of calling, faxing or emailing the Bank to tell it about his Chapter 13 bankruptcy petition before the foreclosure sale.[2] But that's not the same thing as saying that the law requires the Debtor to do so.

In retrospect, the Debtor, the UST, and the Bank are all right. The Bank could have conducted a PACER search prior to proceeding with the foreclosure sale. That would have avoided all of the Law Firm's fees and expenses to set aside the foreclosure sale. The Debtor could have called, faxed or emailed notice to the Bank

---

[2] The Debtor's attorney in this case acknowledged as much at the hearing. The Debtor's attorney represented to the Court that his standard practice is to provide notice to a foreclosing creditor by telephone, fax or email upon the filing of the petition for relief without waiting for the official notice to be given by the bankruptcy court clerk pursuant to the applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The Debtor's attorney was candid in telling the Court that he had requested an administrative assistant in his office to send a copy of the Debtor's Chapter 13 petition to the Bank once the petition was filed and that it was only after the foreclosure sale was held that it came to his attention that this was not done.

that he had filed Chapter 13. That too would have avoided all of the Law Firm's fees and expenses to set aside the foreclosure sale. That neither did so is unfortunate, but it does not mean that either of them breached any legal duty. The Court encourages attorneys for both debtors and creditors to adopt a "best practices" approach whereby a debtor provides telephone, fax or email notice of a bankruptcy filing to a foreclosing creditor and follows up to verify receipt, and a foreclosing creditor conducts a PACER search or other investigation to see if its borrower filed bankruptcy before holding a foreclosure sale. Neither of these practices will cost much time or money and they can save an expensive and time-consuming fight later. But the Court has no authority itself to create a rule of law imposing such duty on either a debtor or a foreclosing creditor in these circumstances and therefore declines the parties' invitations to do so.[3]

---

[3] The Bank's brief contains an extensive discussion of the concept of "least cost avoider" in support of the Bank's request that the Court impose a duty on a debtor to call, fax or email a foreclosing creditor before filing bankruptcy. The Bank argues that it is cheaper and easier for a debtor or their attorney to do so than it is for a foreclosing creditor to continuously check PACER to see if its borrower filed bankruptcy. Maybe so, if one looks only at the cost of providing a telephone call, fax or email versus the cost of a continuous PACER search or other investigating act by a foreclosing creditor. But that is not the only consideration.

Both the debtor and the foreclosing creditor run a risk if they do not adopt the type of best practices discussed in this opinion. If a debtor does not telephone, fax or email a foreclosing creditor that a bankruptcy petition has been filed, the debtor runs the risk of having to incur substantial legal fees later on in a fight like the one before the Court. Unless the debtor proves there is a willful violation of the automatic stay under § 362(k), the debtor is likely to have to bear the cost of these fees. That could be enough to sink the debtor's Chapter 13 plan. Likewise, if a foreclosing creditor does not run a PACER search or conduct some other investigation to determine if its borrower filed bankruptcy before proceeding with a foreclosure sale, the creditor also runs the risk of having to incur substantial legal fees later on in a fight like

-18-

Having rejected the competing arguments that there was some breach of duty that is dispositive of what is recoverable by the Bank from the Debtor or the Property, the Court will next address the parties' other arguments. The starting point to do so is the text of the contract on which the Bank relies. As noted earlier, Section 9 of the Mortgage only permits the Bank to recover "reasonable attorneys' fees to protect [the Bank's] interest in the Property." When the Debtor filed his Chapter 13 petition, the Bank's interest in the Property was that of a mortgagee under the Mortgage. None of the Law Firm's fees and expenses to set aside the foreclosure sale were incurred to protect that interest. Rather, all of those fees and expenses were incurred to fix the Bank's violation of the automatic stay.[4] It was understandable that the Bank would take action to unwind the stay violation, eliminate possible downside liability, and

---

the one before the Court. But the foreclosing creditor – unlike the debtor – runs the additional risk of violating the injunction of § 362 if it does not investigate before conducting a foreclosure sale. Violations of injunctions have a way of taking on a life of their own, and could also subject the creditor to damages under § 362(k) if the debtor can prove the automatic stay violation to be willful. While the Bank may be correct that the "least cost avoider" concept suggests that the debtor should have an additional duty, it is the foreclosing creditor, not the debtor, that may have the greater downside risk because the creditor, not the debtor, is the party whose conduct may violate the injunction of § 362.

In any event, whatever the merits of the "least cost avoider" policy, as explained in this opinion, the Court does not have the authority to create a rule of law imposing a duty on either a debtor or foreclosing creditor, whether based on a "least cost avoider" theory or otherwise. It is up to Congress, not the bankruptcy court, to make such a rule.

[4] The Bank concedes that the foreclosure sale violated the automatic stay, though it insists that there was nothing willful about the stay violation because the Bank did not know of the bankruptcy case at the time the foreclosure sale was held.

restore the parties to the rights they had in the Property when the Debtor filed his Chapter 13 petition and the automatic stay came into effect. But that does not mean that the Law Firm's fees and expenses to do so were incurred to *protect* the Bank's *interest* as a mortgagee in the Property. The Court holds that none of the Law Firm's fees and expenses in setting aside the foreclosure sale are recoverable under Section 9 because they were not incurred to protect the Bank's interest in the Property.

The Notices do not specify how much of the Law Firm's fees were incurred in setting aside the foreclosure sale. The UST states that it was "approximately $6,056.25." Neither the Debtor nor the Bank state a specific amount, although the Bank admits that "most of the services rendered by the Law Firm related to the rescission" of the foreclosure sale. Many of the Law Firm's time entries lump tasks together, making it difficult to determine with any degree of precision how much time the Law Firm spent on any given task.[5] After reviewing all of the Law Firm's time sheets attached to the Notices, and making its best efforts to separate the Law Firm's services in setting aside the foreclosure sale from its other services, the Court finds that $9,875.00 of the Law Firm's fees were incurred either directly or indirectly to set

---

[5] This observation is not intended to be critical of the Law Firm. The Notices are not a fee application subject to the requirements that the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and the UST impose on a professional filing a fee application under § 330 of the Bankruptcy Code, Fed. R. Bankr. P. 2016 and the UST Fee Guidelines.

aside the foreclosure sale and remedy the stay violation. The Court also finds that all $48.18 of its expenses were incurred to set aside the foreclosure sale and remedy the stay violation. These fees and expenses are not recoverable by the Bank from the Debtor or the Property as they were not incurred to protect the Bank's interest in the Property, as required by Section 9. Because these fees and expenses are not recoverable at all under Section 9, the Court need not reach either of the Debtor's and the UST's additional arguments that a creditor who violates the automatic stay can never recover any attorney fees and expenses, or that the Law Firm's fees and expenses to set aside the foreclosure sale were not reasonable in amount.[6]

---

[6] In making the additional argument that the Law Firm's fees and expenses incurred in setting aside the foreclosure sale were not reasonable, the Debtor states that setting aside the foreclosure sale could have been easily accomplished by an affidavit to expunge the foreclosure sale, with much lower fees and expenses for the Law Firm. The Law Firm responds that because the Property had been sold to the Purchaser at the foreclosure sale, there is doubt as to whether an affidavit expunging the foreclosure sale is sufficient under Michigan real property law. That is why the Law Firm instead required an agreement to rescind the foreclosure sale and filed a motion to have the agreement approved by the Court.

Reasonable lawyers can differ on the advice that they provide to their clients regarding the documentation necessary to effectuate a transaction involving real property and, in particular, the setting aside of a foreclosure sale. The Court has no reason to believe that the Law Firm did anything other than provide competent legal advice to the Bank to pursue a course of action that the Law Firm believed to be prudent in the circumstances. But the Court need not weigh in on whether the approach suggested by the Debtor – an affidavit expunging the foreclosure sale – or the approach taken by the Law Firm – a rescission agreement brought before the Court for approval – is the better approach. The reason is because whatever approach was taken by the Law Firm, none of the fees and expenses incurred to fix the Bank's violation of the automatic stay are recoverable under the Mortgage because, as explained above, they were all incurred to rectify a stay violation, not to protect the Bank's mortgagee's interest in the Property.

-21-

<u>The remaining fees</u>

The Law Firm incurred the remaining $2,500.00 of fees in preparing and filing a proof of claim, reviewing the Debtor's schedules of assets and liabilities and Chapter 13 plan, objecting to the plan, and otherwise representing the Bank in connection with the Debtor's bankruptcy case. All of those fees appear to be for routine legal services representing a creditor holding a mortgage on a debtor's residence in a Chapter 13 case. In contrast to the Law Firm's fees to set aside the foreclosure sale, these remaining fees were incurred for work to protect the Bank's interest as a mortgagee in the Property. That brings them within the type of fees described in Section 9. But even these fees are only recoverable under Section 9 if they are reasonable in amount. The Debtor and the UST argue that they are not.[7]

---

[7] None of the parties directed the Court to any controlling law governing the determination of reasonable fees. From the Court's perspective, the result is the same in this case whether applying federal law or Michigan law. <u>Compare</u> <u>Boddy v. United States Bankruptcy Court</u> (<u>In re Boddy</u>), 950 F.2d 334, 337 (6th Cir. 1991) (requiring that the Court "first determin[e] the 'lodestar' amount, which is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended" and then "exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area"); <u>with</u> <u>Smith v. Khouri</u>, 751 N.W.2d 472, 475 (Mich. 2008) (holding that reasonable attorney fees under Michigan law start with applying factor 3 of Michigan Rules of Professional Conduct 1.5(a), "i.e., the reasonable hourly or daily rate customarily charged in the locality for similar legal services, using reliable surveys or other credible evidence," then multiplying this number "by the reasonable number of hours expended," and finally adjusting based on other factors in Rule 1.5(a)); <u>and</u> <u>Hemlock Semiconductor Operations, LLC v. SolarWorld Inds. Sachen GMBH</u>, 702 Fed. Appx. 408, 411 (6th Cir. Aug. 16, 2017) (holding that Michigan law requires performing a lodestar analysis as directed by <u>Smith</u>, and then "the court may use its discretion to

The Debtor objects to all but $1,250.00 of the Law Firm's remaining fees, consisting of $750.00 for preparation of a proof of claim and review of the Debtor's plan, and $500.00 for objecting to the Debtor's plan. The UST objects to all of the Law Firm's remaining fees because they exceed the Fannie Mae guideline of $1,675.00 and the Freddie Mac guideline of $1,400.00 for allowable fees in a Chapter 13 case. Further, the UST argues that the Law Firm's work product also contained a "number of mistakes." The UST also supports its position by providing an affidavit of David W. Ruskin, a standing Chapter 13 trustee in the Eastern District of Michigan ("Ruskin"). Among other things, Ruskin's affidavit states "A normal range for post-petition bankruptcy work is between $300 and $1,600 for competent and accurate work."

The Law Firm is an experienced bankruptcy law firm, with a reputation for competence. A fee of $2,500.00 represents 10 hours of its work at $250.00 per hour. That is more time than the Court ordinarily sees in a case like this. However, after reviewing all of the Law Firm's time entries on the statements attached to the Notices, and drawing on the Court's own experience in presiding over thousands of Chapter 13 cases, the Court finds that $2,500.00 is within the range of reasonableness – albeit on

consider whether to adjust the attorney-fee award upward or downward based on a number of factors").

-23-

the very high end of that range – for the Law Firm's fees in representing the Bank in the Debtor's Chapter 13 case to protect the Bank's interest in the Property. It is true that $2,500.00 exceeds the Fannie Mae and Freddie Mac guidelines, and the "normal range" described in Ruskin's affidavit. But none of those are binding in this case. The Court holds that the Bank may recover $2,500.00 of the Law Firm's fees under Section 9.

### Under Fed. R. Bankr. P. 3002.1(e), is payment of the Law Firm's fees required to cure and maintain under § 1322(b)(5)?

The last issue relates to the determination under Fed. R. Bankr. P. 3002.1(e) of whether the payment of any of the Law Firm's fees is required by the Mortgage and applicable nonbankruptcy law for the Debtor to cure a default and maintain payments under § 1322(b)(5) of the Bankruptcy Code.

In his Objection, the Debtor states that none of the Law Firm's fees must be paid in order for the Debtor to "cure and maintain" the Mortgage under § 1322(b)(5). In its reply, the Bank admits that the Law Firm's fees are not "required to cure a default or maintain payments in accordance with § 1322(b)(5)." The Bank explains that the reason is because Section 9 states that attorney fees recoverable under that section "shall become additional debt of Borrower . . . and shall be payable . . . upon notice from Lender to Borrower requesting payment." The Bank admits that it has not

issued such notice and that payment of any of the Law Firm's fees at this time is not required for the Debtor to cure and maintain the Mortgage in accordance with § 1322(b)(5). At the hearing, the Bank's attorney confirmed that the Bank is not requesting payment of any of the Law Firm's fees at this time.

Pursuant to Section 9, the Law Firm's fees, to the extent recoverable at all under the Mortgage, simply become part of the debt owed by the Debtor to the Bank, due and payable only when the note secured by the Mortgage matures and becomes due and payable, absent a notice from the Bank requesting payment. Therefore, the Debtor need not pay the Law Firm's fees in order to cure and maintain the Mortgage under § 1322(b)(5).

## Conclusion

Both the Debtor and the Bank could have taken action requiring little time and money that would have avoided this entire dispute. The Court encourages each of them to adopt a practice going forward that will prevent this from happening again. Not because the law necessarily requires it, but because it is prudent and reasonable for each of them to do so.

The Objections are sustained in part and denied in part. The Court holds that $2,500.00 of the Law Firm's fees are recoverable by the Bank under Section 9 and are added to the Bank's secured claim. However, that amount is not required to be paid

under the Debtor's plan to enable the Debtor to cure a default or maintain payments under the Mortgage in accordance with § 1322(b)(5). The Law Firm's fees that exceed $2,500.00, and the Law Firm's expenses, are not recoverable by the Bank from the Debtor or the Property.

The Court will enter a separate order consistent with this opinion.

**Signed on January 19, 2018**

/s/ Phillip J. Shefferly

**Phillip J. Shefferly**
**United States Bankruptcy Judge**

-26-